IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14–cv–02258–REB–KMT

SHANE JOHNSON,

      Plaintiff,

v.

CARIE SWIBAS, individual and official capacity as dietician,
JO ANN BURT, individual and official capacity as dietician,
CHARLEEN CROCKETT, individual and official capacity as Food Service Administrator,
KATHLEEN BOYD, individual and official capacity as nurse,
PEGGY EWERS, individual and official capacity as nurse, and
JULIE RUSSELL, individual and official capacity as ADA Inmate Coordinator,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Kathleen M. Tafoya

      This matter is before the court on Defendant Burt's "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6)" (Doc. No. 25 [Burt's Mot.], filed December 30, 2014), to which Plaintiff filed his response on January 26, 2015 (Doc. No. 29 [Resp. Burt's Mot.]) and Defendant Burt filed her reply on February 12, 2015 (Doc. No. 31 [Burt's Reply]).

      Also before the court is Defendants Swibas, Crocket, Boyd, Ewers, and Russell's ("CDOC Defendants") "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6)" (Doc. No. 26 [CODC's Mot.], filed January 5, 2015), to which Plaintiff filed his response on January 26, 2015 (Doc. No. 30 [Resp. CDOC's Mot.]) and the CDOC Defendants filed their reply on February 13, 2015 (Doc. No. 33 [CDOC's Reply]).

## STATEMENT OF CASE

Plaintiff, proceeding *pro se*, is a prisoner incarcerated in Colorado Department of

Corrections ("CDOC").  (*See* Doc. No.9 [Am. Compl.], filed October 21, 2014.)  Plaintiff asserts

several claims against the Defendants.

In Claim One, Plaintiff alleges that his religious rights were violated by the failure to

provide him with a kosher diet that he was not allergic to, and that his Eighth Amendment rights

were violated by the deprivation of a medical snack.  (*See id.* at 4,5.)  Plaintiff alleges in

September 2013, he met with a physician to discuss a worsening of a pre-existing rash, lesions,

and weight loss that he attributed to an allergy to an unspecified substance in the kosher diet

meals provided by "Meal Mart."  (*Id.* at 5–6.)  Plaintiff was referred to a dietician, Defendant

Burt, who he alleges violated his Eighth Amendment rights by requiring that he undergo Radio

Allergo Sorbent (RAST) testing to substantiate his self-diagnosis of an allergy and to identify the

alleged allergen in the meals and by failing to provide him with a substitute diet.  (*Id.* at 6.)

Plaintiff alleges on October 22, 2013, he saw another physician regarding the rash and recent

weight loss, and he was then referred to another dietician, Defendant Swibas, who offered to take

Plaintiff off of the kosher diet plan.  (*Id.* at 7.)

Plaintiff began filing a series of grievances about this issue on November 9, 2013, and on

December 24, 2013, his kosher diet was discontinued on the basis that he had recently purchased

non-kosher food from the prison Canteen, and that this was the second time he had done so in

one year.  (*Id.* at 7–8.)  On December 31, 2013, Plaintiff's medical snack also was cancelled,

after which he began filing grievances regarding that issue.  (*Id.*)  On January 15, 2014, Plaintiff

received a grievance response from Defendant Boyd indicating that on December 23, 2013, there

had been a conference between Defendant Boyd and an unnamed dietician, which resulted in the cancellation of the snack. (*Id.*) Plaintiff alleges that he lost a significant amount of weight, and that he experienced shakes, muscle spasms, insomnia, severe headaches and hallucinations as a result of the inadequate provision of food, though Plaintiff also alleges that he was receiving treatment for Hepatitis C during this time period. (*Id.* at 6, 9.) He contends that he sent numerous letters to Defendant Swibas and requests for sick calls to Boyd, but did not receive responses. (*Id.* at 9.) He also alleges that he filed grievances about this issue, which were denied by Defendant Ewers. (*Id.*)

In Claim Two, Plaintiff alleges that he was diagnosed with paruresis or "shy bladder," and that when he was incarcerated at the Limon Correctional Facility on May 6, 2014, he was housed in a cell with a cell mate. (*Id.* at 12–13.) He alleges that he filed requests with Defendant Russell, the ADA Inmate Coordinator, for a single cell, so that he would not have to urinate in front of his cell mate, which he alleges he could not do. (*Id.*) Plaintiff alleges that Defendant Russell denied his requests for an ADA accommodation entitling him to a single cell, causing him great pain due to his inability to urinate in front of his cell mate. (*Id.* at 13–14.) Plaintiff alleges that he was placed in a single cell on July 20, 2014. (*Id.* at 15.) Plaintiff alleges that Defendant Russell's denials of his grievances and requests for an ADA accommodation for his alleged disability (the paruresis) violated his rights under the ADA and constituted deliberate indifference in violation of the Eighth Amendment. (*Id.* at 16.)

Plaintiff's claims under the ADA have been dismissed as "legally frivolous." (*See* Doc. 10 at 8.) In addition, Plaintiff's claims for monetary damages against Defendants in their official capacities pursuant to 42 U.S.C. § 1983, and pursuant to the Religious Land Use and

Institutionalized Persons Act ("RLUIPA"), have been dismissed.  (*Id.*)  Finally, Plaintiff's claims

for monetary damages against Defendants in their individual capacities have been dismissed.

(*Id.*)

Defendants, with the exception of Defendants Boyd and Swibas, move to dismiss all of

Plantiff's claims against them.[1]

## LEGAL STANDARDS

### *1.*     **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also*

*Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to

less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's

"conclusory allegations without supporting factual averments are insufficient to state a claim

upon which relief can be based."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  A

court may not assume that a plaintiff can prove facts that have not been alleged, or that a

defendant has violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors*

*of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Whitney v.*

*New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual

allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156,

1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the

---

[1] Defendants Boyd and Swibas filed an Answer as to Plaintiff's claims that they wrongfully
terminated Plaintiff's snacks.  (See Doc. No. 27, filed January 5, 2015.)

absence of any discussion of those issues").  The plaintiff's *pro se* status does not entitle him to application of different rules.  *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

**2.**      ***Lack of Subject Matter Jurisdiction***

Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case.  Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  *See Basso*, 495 F.2d at 909.  The dismissal is without prejudice.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a

party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

**3.       *Failure to State a Claim Upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the Court considers the factual allegations "to

6

determine if they plausibly suggest an entitlement to relief." *Id*. at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*  (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

## ANALYSIS

### *1.    Claims for Injunctive Relief Against Defendant Burt*

Defendant Burt moves to dismiss Plaintiff's claims for injunctive relief against her as moot because she is no longer employed by the CDOC.  (Burt's Mot. at 5; *see also* Doc. No. 12 [Waiver of Service indicating Defendant Burt is no longer a CDOC employee].)

Mootness, like standing, is a jurisdictional doctrine originating in Article III's "case" or "controversy" language. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  "Under Article III of the Constitution, federal courts may only adjudicate live controversies." *Fischbach v. N.M. Activities Assoc.*, 38 F.3d 1159, 1160 (10th Cir. 1994).  The controversy "must exist at all stages of appellate or certiorari review, and not simply at the date the action is initiated." *Id.*

(internal quotation marks and brackets omitted).  Thus, "when intervening acts destroy a party's legally cognizable interest in the outcome of adjudication[,] . . . Article III . . . deprive[s] the federal courts of jurisdiction over that party's claim." *Tandy v. City of Wichita*, 380 F.3d 1277, 1290 (10th Cir. 2004); *Moongate Water Co., Inc. v. Dona Ana Mut. Domestic Water Consumers Ass'n*, 420 F.3d 1082, 1088 (10th Cir. 2005).

Plaintiff's request for injunctive relief against Defendant Burt falls squarely within the mootness doctrine, as any injunctive relief directed to her would have no practical impact now that she is no longer a CDOC employee.  *See Tucker v. Phyfer*, 819 F.2d 1030, 1034 n.3 (11th Cir. 1987) (mootness usually requires dismissal "because of events occurring after the plaintiff filed suit" such that "any relief the court might grant would be of no utility to the plaintiff"); *Martin–Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."); *Perez v. Sec'y of Health, Educ., and Welfare*, 354 F. Supp. 1342, 1346 (D.P.R.1972) (a request for injunctive relief is generally moot where "the question presented for decision seeks a judgment upon a matter which, even if the sought judgment were granted, could not have any practical effect upon the parties").

Accordingly, Plaintiffs' claims for injunctive relief asserted against Defendant Burt properly are dismissed for lack of subject matter jurisdiction.

## 2.    *Personal Participation of Defendant Ewers*

The CDOC Defendants move to dismiss the claims against Defendant Ewers for lack of personal participation.  (CDOC's Mot. at 13–14.)

8

The personal participation required to hold a person accountable in a § 1983 action is personal participation in the alleged constitutional violation. *See Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) ("To establish a supervisor's liability under § 1983 [the plaintiff] must show that 'an "affirmative link" exists between the [constitutional] deprivation and either the supervisor's "personal participation, his exercise of control or direction, or his failure to supervise." " ') (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir.1988) (quoting *Specht v. Jensen*, 832 F.2d 1516, 1524 (10th Cir. 1987))).  "[A] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citing, *e.g.*, *Whitington v. Ortiz*, 307 F. App'x 179, 192–193, 2009 WL 74471, at * 12 (10th Cir. Jan. 13, 2009) (denial of grievances alone is insufficient to establish personal participation in alleged constitutional violations which prompted filing of grievance); *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (per curiam) ("[Plaintiff] failed to state First Amendment claims relating to his grievances . . . because defendants' denial of his grievances did not state a substantive constitutional claim.").  *See also Adams v. Wiley*, No. 10-1052, 2010 WL 3995977, at * 3 (10th Cir. Oct. 13, 2010) ("denial of a grievance alone does not constitute 'personal participation' in the denial of a constitutional right sufficient to support a *Bivens* claim against these individuals").

Plaintiff's sole allegation against Defendant Ewers is that she denied a grievance regarding Plaintiff's attempts to obtain medical care.  (*See* Am. Compl. at 9.)  Thus, Plaintiff's claims against Defendant Ewers properly are dismissed.[2]

### 3.     *Plaintiff's Eighth Amendment Claim for Failure to Provide Substitute Kosher Diet*

Plaintiff alleges Defendants violated his Eighth Amendment rights by failing to provide him with a nutritionally equivalent kosher substitute diet when he complained of problems with the prison's usual kosher diet. (*See* Am. Compl. at 4, 6–7.)  Plaintiff alleges that Defendants were deliberately indifferent to a serious risk of substantial harm to him.  (*See id.*)  The defendants move to dismiss Plaintiff's Eighth Amendment claim against them.  (*See* Burt's Mot. at 8–11; CDOC Mot. at 6–9.)

The Eighth Amendment's ban on cruel and unusual punishment is violated if a defendant's "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  A claim for deliberate indifference has both an objective component and a subjective component.  To satisfy the objective component, a prisoner must demonstrate that his medical need is "objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay

---

[2] The CDOC Defendants construe Plaintiff's Amended Complaint as asserting a claim against Defendant Crockett for her promulgation of a policy that requires inmates to test positive for an allergy before they will be provided with substitute kosher meals.  (*See* CDOC's Mot. at 14.)  As such, they also move to dismiss the claim against Defendant Crockett for lack of her personal participation.  (*See id.*)  As explained *infra*, the court does not construe Plaintiff's claims so narrowly.  Thus the court will address the claims asserted against Defendant Crocker in turn.

person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d

1220, 1224 (10th Cir. 1999) (citation omitted).

To satisfy the subjective component, a prisoner must demonstrate that the prison official

acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. "'[D]eliberate

indifference' is a stringent standard of fault." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*,

520 U.S. 397, 410 (1997). "A showing of simple or even heightened negligence will not

suffice." *Id.*; *see also Giron v. Corrs. Corp. of Am.*, 191 F.3d 1281, 1286 (10th Cir. 1999).

Instead, "[t]he subjective component is akin to recklessness in the criminal law, where, to act

recklessly, a person must consciously disregard a substantial risk of serious harm." *Self*, 439

F.3d at 1231. That is, the official must "know[] of and disregard[] an excessive risk to inmate

health and safety." *Farmer*, 511 U.S. at 837; *see also id.* ("the official must both be aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists, and

he must also draw the inference.").

In support of their motions to dismiss, the defendants argue that Plaintiff had a self-

diagnosed, unspecified allergy for which he was required to undergo RAST allergy testing before

the defendants could substitute Plaintiff's diet. (*See* Burt's Mot. at 8–10; CDOC's Mot. at 6–8.)

Defendants argue that Plaintiff fails to allege that he informed Defendants that he was allergic to

any particular item in the kosher meals or that he has ever been diagnosed with a food allergy by

anyone. (*See id.*) Defendants also argue that Defendants took appropriate steps to test Plaintiff

for his self-reported food allergy and that "Plaintiff's allegations indicate that he underwent

allergy testing, and the results were negative." (*See* CDOC's Mot. at 7.) Defendants contend

that there was no way to provide Plaintiff with a non-allergic kosher meal without first

11

administering the allergy testing, and, in the end, because the test results were negative, there

was no way to provide Plaintiff with a non-allergic kosher meal because there was no known

allergen to avoid.  (*See id.* at 8.)

The defendants contend that Plaintiff's Eighth Amendment claim is that the defendants

violated his rights "by requiring that he undergo RAST allergy testing before agreeing to pursue

substitute, 'nonallergic' kosher meals for him, and by declining to provide him with such meals

when the allergy testing results came back negative."  (CDOC's Mot. at 6 [citing Am. Compl. at

6–7].)  The court disagrees with the defendants' characterization of Plaintiff's Eighth

Amendment claim.  Though it appears Plaintiff did self-diagnose an allergy to the kosher meals

(*see* Am. Compl. at 4), Plaintiff alleges he was seen on September 18, 2013, by a physician, and

the two discussed Plaintiff's "rash and lesions and the way this condition worsened shortly after

eating the 'Meal Mart' brand dinners served on the kosher diet."  (*Id.* at 6.)  Plaintiff alleges this

physician referred him to Defendant Burt, a dietitian, "for a nutritional substitute to said dinners,

warning [Defendant] Burt that [he] was on Hepatitis C treatment, had lost eight pounds this last

month and that said dinners were possibly exacerbating my rash."  (*Id.*)  Plaintiff alleges

Defendant Burt refused to provide a substitute for the Meal Mart meals.  (*Id.*)  Plaintiff alleges he

was seen again on October 22, 2013, by another physician, and the two discussed "the same rash

and lesions and weight loss conditions."  (*Id.* at 7.)  Plaintiff alleges this physician referred him

to Defendant Swibas "for a nutritional substitute to the Meal Mart dinners."  (*Id.*)  Plaintiff

alleges Defendant Swibas failed to provide a substitute.  (*Id.*)

It is clear from Plaintiff's allegations that he asserts a claim that Defendants Burt and

Swibas failed to provide him an appropriate substitute for the kosher meals, despite two

physicians' evaluations and referrals to two separate dieticians to provide nutritional substitutes. There is no indication in the Amended Complaint that either physician referred Plaintiff for evaluation by the dieticians for evaluations only of a food allergy.  Even if Plaintiff's claim was that the defendants required him to undergo allergy testing before providing an appropriate substitute meal plan, despite Defendants' contention that Plaintiff states in the Amended Complaint that the allergy testing results were negative (*see*, *e.g.*, CDOC's Mot. at 7), the Amended Complaint is unclear as to whether Plaintiff had the RAST testing, and there is no clear indication of the test results.  (*See* Am. Compl. at 6–7.)

The court finds that Plaintiff, at the pleading stage, has stated a claim that Defendants Burt and Swibas violated his Eighth Amendment rights.  Their motions to dismiss this claim properly are denied.[3]

### 4.    *Plaintiff's Religious Rights Claims*

The defendants also move to dismiss Plaintiff's religious rights claims.  (*See* Burt's Mot. at 11–14; CDOC's Mot. at 9–11.)

In order to establish a constitutional violation of his right to free exercise of religion, Plaintiff must survive a two-step inquiry.  First, he must show that the defendants "substantially burdened . . . sincerely-held religious beliefs."  *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007)).  "Second, prison officials-defendants may 'identif[y] the legitimate penological interests that justif [ied] the impinging conduct.' "  *Id.* (quoting *Boles*, 486 F.3d at 1182).  Similarly, to proceed with a RLUIPA claim,

---

[3] Upon a review of the Amended Complaint, Plaintiff does not assert this Eighth Amendment claim against any of the other defendants.  (*See* Am. Compl. at 5–8.)

Plaintiff must demonstrate that he wishes to engage in (1) a religious exercise; (2) motivated by a sincerely held belief; and (3) such exercise is subject to a substantial burden imposed by the government. *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010).

Under RLUIPA, the Tenth Circuit has identified three broad ways government action may impose a substantial burden:

> (1) requir[ing] participation in an activity prohibited by a sincerely held religious belief, or (2) prevent[ing] participation in conduct motivated by a sincerely held religious belief, or (3) plac[ing] substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief, such as where the government presents the plaintiff with a Hobson's choice-an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief.

*Abdulhaseeb*, 600 F.3d at 1315.  Under the Free Exercise Clause, a substantial burden exists if the government "conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting a substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 717–18 (1981).

Plaintiff alleges on November 7, 2013, he met with Defendant Swibas, who acknowledged the existence of his rash/lesions and weight loss.  (Am. Compl. at 7.)  Plaintiff alleges Defendant Swibas "[s]tated that she could take me off the [kosher] dinners if [Plaintiff] agreed to stop [his] kosher diet."  (*Id.*)  Plaintiff states he "declined [Defendant] Swibas' offer to cure the rash/lesions by discontinuing [his] kosher diet."  (*Id.*)  Plaintiff states he believed he should not have to choose between living within the parameters of his religion and living with a rash/lesions.  (*Id.*)

The court finds that Plaintiff, who alleges he was presented by Defendant Swibas with the choice of remaining on the kosher diet or going off of the diet to remedy his medical complaints, has adequately alleged a substantial burden under the Free Exercise Clause and the RLUIPA.

It also appears Plaintiff asserts religious rights claims against Defendants Burt and Crockett.  (*See* Am. Compl. at 9–10.)  As explained *supra*, however, the plaintiff must show that these defendants personally participated in the alleged violations, and conclusory allegations are not sufficient to state a constitutional violation.  *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996).  In his Amended Complant, Plaintiff makes only conclusory allegations that Defendants Burt and Crockett violated his religious rights.  (*See* Am. Compl. at 9–10.)  As such, Plaintiff has failed to allege their personal participation in any violation of his religious rights.

Defendants' motion to dismiss the religious rights claims asserted against Defendant Swibas properly is denied.  However, Defendants' motion to dismiss Plaintiff's religious rights claims asserted against Defendants Burt and Crockett properly is granted.

### 4.      *Plaintiff's Retaliation Claims*

Plaintiff alleges that Defendants Burt, Swibas, and Crockett retaliated against him for filing grievances.  (*See* Am. Compl. at 9–10.)

Prison officials may not retaliate against prisoners for filing administrative grievances. *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991).  To establish a retaliation claim, Plaintiff must show: (1) that he was engaged in constitutionally protected activity; (2) that the defendants' actions caused him to suffer an injury that "would chill a person of ordinary firmness from continuing to engage in that activity;" and (3) that the defendants' adverse actions were

substantially motivated as a response to Plaintiff's exercise of constitutionally protected conduct. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir.2007). *See also Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (applying same test to prisoner claims under § 1983).

Plaintiff alleges on December 24, 2013, five days after he submitted a Step 2 grievance concerning the alleged failures of Defendants Burt and Swibas to provide him with alternative kosher meals, his "diet was abruptly switched from kosher to regular." (Am. Compl. at 8.) Plaintiff alleges on December 26, 2013, he received a letter from Defendant Crockett in which she advised Plaintiff that he had recently ordered non-kosher canteen items and that, because Plaintiff previously had been warned for the same conduct, his kosher diet had been canceled pursuant to CDOC policy. (*Id.*) Plaintiff alleges Defendants Burt, Swibas, and Crockett retaliated against him by "work[ing] in concert to deny [Plaintiff] a kosher meal under the pretext that [he] had received two diet violations within a year." (*Id.* at 10.)

As to Defendant Crockett, Plaintiff fails to allege personal participation in the alleged retaliation. Plaintiff fails to allege that his grievances were directed at any conduct by Defendant Crockett, that Defendant Crockett was aware of any grievances filed by Plaintiff, or that Defendant Crockett's actions were substantially motivated as a response to Plaintiff's filing of grievances against Defendants Burt and Swibas. Plaintiff has failed to allege any relationship between the filing of a grievance and Defendant Crockett's alleged retaliatory action. *Jenkins*, 81 F.3d at 994.

As to Defendants Burt and Swibas, Plaintiff alleges he filed grievances against them, and that they retaliated against him by arranging for the termination of his kosher diet. (*See* Am. Compl. at 9–10.) Plaintiff fails to allege Defendants Burt and Swibas were involved in the

termination of his kosher meals.  To the contrary, Plaintiff alleges Defendant Crockett terminated

his kosher diet because Plaintiff ordered non-kosher canteen items.  Plaintiff relies solely on

speculation and conclusory assertions and fails to plead any specific facts showing that

Defendants Burt and Swibas were motivated to discontinue his kosher diet because of grievances

filed against them.

Accordingly, the defendants' motions to dismiss Plaintiff's retaliation claims properly is

granted.

**5.      *Plaintiff's Claims Against Defendant Russell***

In Claim Two, Plaintiff alleges that Defendant Russell, the ADA Coordinator, violated

his Eighth Amendment rights because she denied his request for an ADA accommodation in

which he requested a single cell due to his alleged "shy bladder."[4]  (Am. Compl. at 1, 3, 12–16.)

The Tenth Circuit has recognized three types of conduct which may constitute deliberate

indifference in a prison medical case: (1) a medical professional failing to treat a serious medical

condition; (2) a prison official preventing an inmate from receiving medical treatment; or (3) a

prison official denying a prisoner access to medical personnel capable of evaluating the inmate's

condition.  *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000).

In his Amended Complaint, Plaintiff fails to allege Defendant Russell is a medical

professional who failed to treat a serious medical condition, that Defendant Russell prevented

him from receiving medical treatment, or that Defendant Russell denied him access to medical

personnel capable of evaluating his condition.  Rather, Plaintiff alleges Defendant Russell is the

---

[4] Plaintiff's ADA claims against Defendant Russell have been dismissed as legally frivolous.
(*See* Doc. No. 10 at 8.)

ADA Inmate Coordinator who did not grant him an ADA accommodation for a single cell, and that she has the "responsibility/authority with respect to DOC policy, to provide an accommodation." (*See* Am. Compl. at 13–15.)   These allegations, however, do not state an Eighth Amendment claim.

Therefore, the CDOC Defendants' motion to dismiss the Eighth Amendment claim against Defendant Russell properly is granted.

### 6.    *Qualified Immunity*

All of the defendants, in their individual capacities, raise the defense of qualified immunity to Plaintiff's claims.  Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).  To overcome the defendants' claim of qualified immunity, the plaintiff must establish that the defendants' actions violated plaintiff's constitutional or statutory right and that the right at issue was clearly established at the time of the defendants' alleged unlawful conduct.  *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).  "[C]ourts have discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted).

This court recommends Plaintiff's claims against Defendant Ewers, Plaintiff's religious rights claims against Defendants Burt and Crockett, Plaintiff's retaliation claims, and Plaintiff's Eighth Amendment claims against Defendant Russell should be dismissed.  Thus, Plaintiff has not established that the defendants violated Plaintiff's constitutional or statutory rights as to

those claims, and the defendants are entitled to qualified immunity in their individual capacities as to those claims.

## CONCLUSION

Based on the foregoing, this court respectfully

**RECOMMENDS** that

1.      Defendant Burt's "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6)" (Doc. No. 25) and Defendants Swibas, Crocket, Boyd, Ewers, and Russell's "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6)" (Doc. No. 26) be **GRANTED** in part and **DENIED** in part as follows:

A.      Plaintiff's claims for injunctive relief asserted against Defendant Burt should be dismissed for lack of subject matter jurisdiction; and

B.      Plaintiff's claims against Defendant Ewers should be dismissed for Plaintiff's failure to allege personal participation, and she should be granted qualified immunity on the claims asserted against her;

C.      Plaintiff's Eighth Amendment claim for failure to provide a substitute kosher diet should proceed against Defendants Burt and Swibas only;

D.      Plaintiff's religious rights claims should proceed against Defendant Swibas only but should be dismissed as to Defendants Burt and Crockett for failure to state a claim upon which relief can be granted; and Defendants Burt and Crockett should be granted qualified immunity on these claims;

E.      Plaintiff's retaliation claims should be dismissed for failure to state a claim upon which relief can be granted, and the defendants should be granted qualified immunity on these claims;

F.      Plaintiff's claims against Defendant Russell should be dismissed for failure to state a claim upon which relief can be granted, and she should be granted qualified immunity on the claims asserted against her;

G.      Defendants Crockett, Ewers, and Russell should be dismissed as defendants; and

H.      This court recommends Plaintiff's claims against Defendant Ewers, Plaintiff's religious rights claims against Defendants Burt and Crockett, Plaintiff's retaliation claims, and Plaintiff's Eighth Amendment claims against Defendant Russell should be dismissed.  Thus, Plaintiff has not established that the defendants violated Plaintiff's constitutional or statutory rights as to those claims, and the defendants are entitled to qualified immunity in their individual capacities as to those claims.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059–60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 27th day of August, 2015.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge